### Sherwood vs. Reade and others.

Where the commissioners, under the act of 1837, for loaning certain monies of the United States, advertised and sold mortgaged premises on the first Tuesday of February, pursuant to the statute, for the non payment of the interest due in the preceding October, and some of the terms of the sale were, that the premises should be put up at the amount of the mortgage and interest with the costs and expenses of such sale, and sold to the highest bidder, who should forthwith pay fourteen per cent of the purchase money, and the expenses of the sale, and execute a written agreement to comply with the other terms of the sale, and the person to whom the premises were struck off refused to pay the fourteen per cent or to sign the written agreement; *Held*, that the commissioners were authorized to put up the premises for sale again immediately; and that they were not bound to wait until the third Tuesday of September, if there was a purchaser present at the re-sale on the first Tuesday of February, who was willing to bid to the amount of the mortgage and interest and costs, and to comply with the terms of the sale and pay the purchase money.

THIS was an appeal from a decision of the vice chancellor of the first circuit, refusing to dissolve an injunction. In 1838, G. G. Root being the owner of three lots of ground in the city of New-York, mortgaged the same to the commissioners for loaning certain monies of the United States for the county of New-York, to secure the payment of $4000, loaned by them under the provisions of the act of the 4th of April, 1837. Root subsequently conveyed the premises to S. Sherwood, the complainant, subject to that mortgage. And Sherwood then mortgaged his equity of redemption therein, to J. R. Stuyvesant, to secure the payment of $6000 and interest; which last mentioned mortgage Stuyvesant assigned to the defendant, Hooker. On the first Tuesday of October, 1839, the sum of $280

February 16.

became due for interest on the mortgage given to the loan commissioners, and the same not being paid, the commissioners advertised the mortgaged premises to be sold on the first Tuesday of February, 1840 ; according to the directions of the statute. At the time of the sale, and before the premises were put up by the auctioneer, he publicly read the terms and conditions of the sale ; which were, in substance, that the premises should be put up at the amount due upon the mortgage to the commissioners, together with the costs and expenses of the sale, and sold to the highest bidder ; that the person to whom the premises were struck off by the auctioneer, should forthwith pay fourteen per cent of the purchase money, and the expenses of the sale, and should execute a written agreement to comply with the the terms of the sale ; and that if this part of the condition of the sale was not complied with the premises would be immediately re-sold. The property was put up for sale by the commissioners upon these terms and was struck off to W. B. Sherwood, at the price of $11,000, who declined paying the fourteen per cent, or to subscribe the conditions of sale. The premises were then put up a second time, the same day, and were struck off to the defendant Reade, for the price of $10,500 ; who had been instructed by Hooker to bid to that amount for him, to cover the amount due on his mortgage upon the premises, in addition to what was due to the loan commissioners. Reade immediately complied with the conditions of the sale, by paying what was required to be paid down, and subscribing the agreement to pay the residue of the purchase money at the end of ten days. S. Sherwood, who was the owner of the equity of redemption, subject to the two mortgages, insisted that the neglect of the first pur chaser to comply the terms of sale, gave him, as owner of the equity of redemption, a further time to redeem under the provisions of the statute ; and that the commissioners had no right to put up the property a second time on that account. He therefore filed his bill in this cause against Reade and Hooker, and against the loan commissioners, to

restrain the giving of a conveyance pursuant to the terms
of sale, or the doing of any other act to impair the com-
plainant's right in the premises.

Upon the coming in of the answers, the defendants ap-
plied for a dissolution of the injunction ; which applica-
tion was denied by the vice chancellor. The respondent
having neglected to appear at the hearing of the appeal,
the case was submitted upon the ex parte argument of

*D. P. Hall*, for the appellants.

THE CHANCELLOR. The question presented for the con-
sideration of the court in this case, arises under the 33d
section of the act of April, 1837, authorizing a loan of
certain monies belonging to the United States, deposited
with the state of New-York for safe keeping. (*Laws of
1827, p.* 130.) The statute directs the commissioners to
advertise the mortgaged premises for sale, in case the in-
terest is not paid, and to sell the same at public vendue on
the first Tuesday of February, to the highest bidder ; and
the purchaser on such sale is to hold the land discharged
of all equity of redemption. The 33d section then, pro-
vides that when the mortgaged premises are thus exposed
for sale, and no person shall bid at such sale a sum equal
to the amount due on the mortgage for principal and inter-
terest and the expenses of the advertisements and the sale,
" *or if any person to whom any such lands shall at any
such sale be struck off, shall not pay for the same,*" then,
an.l in every such case the commissioners shall enter and
take possession of the lands and premises, and let the same
upon the best terms they can obtain, for the benefit of the
state, until the third Tuesday of September then next ;
when the commissioners are again to expose the same
upon a six weeks' notice. And if upon such sale no per-
son shall bid or offer to give for the said lands and
premises a sum equal to the amount due on the mortgage
for principal and interest, including all costs and expenses,
" *or if any person to whom any such lands and premises
shall at any such sale be struck off, shall not pay for the*

*same*," then the commissioners are to bid therefore in behalf of the state, to the amount of the sum at which the premises shall have been appraised ; if necessary to prevent a sale to some other person for a less sum. The section then provides for a redemption of the premises at any time previous to such sale in September, where there has not been an actual sale thereof in February, as contemplated in the previous section.

The construction which the counsel for the complainant puts upon this 33d section of the act is, that if any person bids to the amount of the mortgage, at the sale in February, although he immediately refuses to complete his purchase, the commissioners are precluded from putting up the premises again and selling them to a real bidder who is willing to complete his purchase. And the vice chancellor probably must have taken the same view of the provisions of the act, or he could not have sustained this injunction. If such was the intention of the legislature, I think the purchaser did not go far enough to prevent a re-sale ; as he ought at least to have signed the terms of sale so as to render himself liable for the deficiency, in case the premises should be sold for a less price upon the subsequent sale in September.

Upon a careful examination of the provisions of the statute, however, I am satisfied the legislature were not guilty of the absurdity of directing a mere formal sale of the premises in February, which any irresponsible person could defeat, by bidding higher than any one else and then refusing to pay his bid. The obvious intention of the legislature was to prohibit a sale of the property in February, unless some purchaser could be found who would purchase the mortgaged premises and pay for them at a sum or price which would be sufficient to cover the amount due upon the mortgage with interest and costs. And if no such bidder could be found, that then the commissioners should take possession of the premises, and offer them for sale again in September ; unless the owner of the equity of redemption should in the meantime pay up the amount of

1841.

Sherwood
v.
Reade.

the interest and costs.   There is nothing therefore in that part of the section which, either in terms or by necessary implication, prevents the commissioners from making it a condition of the sale that if the bidder does not immediately pay the amount of the bid, or so much thereof as they may have deemed necessary to ensure the completion of his purchase, that it shall be considered as no bid, and that the premises shall be put up and re-sold to some one who wishes to become a real purchaser ; subject, however, to the restriction imposed by law upon the original bidding, that there shall be no sale of the premises until September unless some person can be found at the sale in February who will bid to the amount required by law, and pay such bid.   By adverting to the latter part of the same section, it will be seen that similar language is used in relation to the sale in September.   At that sale the commissioners are required to bid for the state to the amount of the appraised value of the premises, not exceeding however the amount due upon the mortgage and costs.   And this they are to do, in the language of the previous clause of the section, " if any person to whom any such lands and premises shall at any such sale be struck off, shall not pay for the same." Here there can be no doubt that the legislature intended that the premises should not be struck off to any one, other than the state, unless upon a bid to the amount of the appraised value, if that amount was necessary to satisfy the debt and costs ; and in case any one bid to that amount, or more, and the premises should be knocked down to him accordingly, that they should be immediately put up and re-sold if he did not comply with the terms of the sale by paying the purchase money.   For if the premises cannot be immediately put up and re-sold where they have been struck off to one who bids more than the appraised value, but neglects to pay his bid, the premises never can be sold, under the statute, so as to deprive the owner of the equity of redemption of the power to redeem upon paying the amount of the mortgage with interest and costs.   This being the obvious construction of the language used by the

legislature in the latter part of this section, there is no reason why the same construction should not be put upon similar language used in the previous part of that section, relative to the sale in February. I have no doubt therefore that the commissioners had the right to make it a condition of the sale that if the terms upon which the premises were sold should not be complied with by the purchaser, the land should be put up and re-sold. And the first sale being a nullity, in consequence of the refusal of the purchaser to comply with the terms, the subsequent sale by the commissioners on the day specified in the statute was a valid sale; and was a perfect bar to the equity of redemption of the complainant in the premises.

Neither has he any right to complain of any hardship in the case; for he says the premises were originally bid off by W. B. Sherwood, without his knowledge or privity. He therefore had suffered the mortgaged premises to be advertised and sold, in consequence of his neglecting to pay a trifling sum of interest due on the mortgage to the loan commissioners, and did not even attend the sale or send any one there to bid for him; thus compelling his mortgagee, who lived at a distance, to employ an agent to attend the sale and bid in the property for his own indemnity. And there is nothing in this case to show that the complainant has ever applied to Hooker or Reade to permit him to redeem the premises on equitable terms, or upon any terms whatever; or offered to pay them the amount which they had been compelled to pay in consequence of his gross neglect. The application of W. B. Sherwood, who was not the agent of the complainant, and who bid off the premises without his knowledge or privity, was an application on his own account to get the benefit of his bid which had been relinquished previous to the putting up of the premises the second time. The complainant therefore cannot claim any equity from this offer of a third person who had no right whatever to the premises; even if such an offer if coming from himself should have been accepted. The mortgage to Hooker had in fact been satis-

fied, by the sale for a sufficient amount to pay the same beyond the amount due on the mortgage to the loan commissioners. Any new arrangement made between Hooker and a third person, therefore, in relation to the premises, without getting payment of what was due him on his mortgage, would have left the complainant discharged of any personal liability on his bond; and Hooker would have been obliged to run the risk of the property being worth sufficient, at a future day, to satisfy the whole amount of both mortgages, with interest and costs of foreclosure.

The only claim of the complainant to equitable relief, therefore, depends upon the question whether the commissioners were bound to strike off the premises absolutely to an irresponsible purchaser, who refused to pay his bid or to sign an agreement by which he would be rendered liable for the payment of the deficiency upon a re-sale in September. And I have arrived at the conclusion that the complainant was clearly wrong on that question. The order appealed from must be reversed, with costs. And the injunction must be dissolved; so that the commissioners may proceed and complete the sale by receiving the balance of the purchase money, except that part thereof which belongs to Hooker as the assignee of the second mortgage, and giving a deed of the premises to the purchaser according to the directions of the statute.